FREDERICK COLLINS *et al.*

*v.*

WILLIAM B. HAYTE.

1. MALICIOUS PROSECUTION—*justification.* In an action for malicious prosecution, good faith on the part of the defendant, in respect to the alleged wrongful prosecution, is always an important, if not a vital, element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt, when it would have been wanting in the perception of a person of ordinary prudence and judgment.

2. SAME—*where the alleged malicious prosecution was in a civil suit.* Where the alleged malicious prosecution and arrest were in a civil suit, to recover damages for a private wrong, yet it will be governed by rules of law, as applicable to the good faith of the prosecutor, precisely the same, had the prosecution been of a criminal character.

APPEAL from the Circuit Court of Adams county ; the Hon. JOSEPH SIBLEY, Judge, presiding.

The opinion states the case.

Messrs. SKINNER & MARSH, Messrs. WHEAT & MARCY, and Mr. N. BUSHNELL, for the appellants.

Mr. JACKSON GRIMSHAW and Messrs. WARREN & WHEAT, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

This case is before us again, by appeal from the Adams Circuit Court, a new trial having been had, on the remand from this court at a former term. (*Ante*, p. 337.)

In the opinion then delivered, we placed the reversal of the judgment on the misdirection of the court in ruling out certain questions propounded by the defendants, which we deemed proper.

That error has been cured, as appears from the record now before us, but it is now insisted, with great earnestness, by the appellants, that the verdict is contrary to the evidence in the cause, and a reversal insisted upon for that reason, among others.

We have, consequently, devoted ourselves to a close examination of the testimony, and to the character of the case, and will now state our conclusions at length, and the reasons for them, which seem to be called for under the circumstances of the case.

Our experience teaches us there are few questions of law more difficult of comprehension by a jury, than those which govern trials for malicious prosecutions. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover. They do not readily comprehend why an innocent man may be prosecuted for a supposed crime or offence, and yet have no recourse against the prosecutor who caused his arrest and imprisonment, and yet the preservation of the peace and the good order of society require, that even innocent men may be compelled to submit to great inconvenience and hardship, rather than citizens should be deterred from instituting prosecutions where there is reasonable or probable grounds to believe in the existence of guilt. Good faith, on the part of the prosecution, is always an important, if not a vital, element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt, when it would have been wanting in the perception of a person of ordinary prudence and judgment. Although this prosecution was to recover damages for a private wrong, that is, it was a civil suit, yet it is governed by rules of law precisely the same, had the prosecution been of a criminal character.

We have very carefully looked through the evidence in this case, and have considered the arguments and suggestions of counsel upon it, and we are compelled to the conclusion, that

the jury did not fully comprehend the law which governs the case, else they could not have found the verdict they did. In a word, the prosecution against the plaintiff and the others, which the jury have found was malicious and without probable cause, was for enticing the defendant's apprentices to leave their service, against their written obligations to serve them. This, we say, is the *gist* of the wrong for which the prosecution was instituted. If that charge was true in fact, or if the defendants really believed it to be true, and if such belief was based on circumstances to which reasonably prudent men would yield, then the defendants were justified in instituting the prosecution, and this point we will now consider.

There is no question that the strike by the apprentices was without the least excuse or justification. They had no cause of complaint against their employers, nor did they even allege that they had, and the declared object of the strike was to prevent the defendants from taking any more apprentices, and compel them to pay, not the apprentices, but the journeymen, more wages—certainly a most impertinent interference on the part of the apprentices, evincing anything but acknowledgement of their duty to their masters, and showing a very unjust and malign influence had been exercised over them from some quarter. Nor can any one who reads the evidence in the record, entertain a doubt as to the source of this pernicious influence. Beyond all question, it came from the members of the "moulders' union." This strike was in furtherance of the general objects of that union, which was to compel defendants to abandon the free system, and submit, as they once had, to the control and dictation of the "union"—to give up the management and control of their own affairs, and submit it to the dictation of their employees. This had been the declared object of the union ever since the defendants had freed themselves from its influence, some two years or more previously, and the evidence shows that the plaintiff had been one of the most active of all the members of the union, in the furtherance of this design. While he should have been at work,

earning an honest livelihood, he was employed hanging around the depots and steamboat landings, watching the arrival of moulders, to turn them away from the defendants' service, and he seems to have made it his business to track one of the agents of defendants, who was looking for moulders, to prevent him, by one means or another, from securing the services of any. Whether he was paid by the " union," or acted of his own motion and malice, is a matter of little moment. His zeal in the prosecution of his hostile purpose, was most manifest, and his efforts were, doubtless, crowned with too great success. Now, all this was well known to the defendants, and if, in the weakness of human nature, they did not feel that perfect love for their persecutor which they would have felt for some benefactor, it should not be set down to them as legal malice. It was a legitimate suspicion, and we may add, inference on their part, when they found their apprentices all banded together and on a strike, without the least justification or excuse, that their attention should be first directed to him who had made it so much his business to injure them. Still, this would only have been suspicion, however pregnant, were not the plaintiff's connection with the strike more distinctly established. This is done more fully.

That Wood and other officers and prominent members of the union, this appellee among them, repeatedly met in conclave with the apprentices, and advised and encouraged them in their illegal demands on the defendants, is not and cannot be denied. It is testified to by nearly every witness examined to the point, and was positive evidence touching the direct acts of the plaintiff in the same direction, his position, his relations, his sympathies with the active parties, as manifested by his previous conduct and his speeches at the meetings, would render it more than probable that he was one of and assisted those who appeared more on the surface. It was his policy to conceal himself as much as possible. Would not any reasonable man conclude at once that it was most highly probable that the plaintiff was the moving spirit, while others

were put forward to act more openly? His talents and apparent force of character, entitled him to such position, and ordinarily the demands of justice are fully appreciated and allowed. If so, then here alone was probable cause, which would justify a reasonably prudent man in instituting a suit for damages.

But the proof is abundant of the overt acts.

The testimony of William Apsley is direct to the point. He says : " I talked with Hayte about the strike two or three days before it occurred. Hayte came to the defendant's shop, at the window near where I was working, and asked me how they were getting along? I said the boys were talking of striking, and asked Hayte, if the boys struck, whether they would have the support of the moulders' union. Hayte replied, if the boys struck, they would get the support of the moulders' union here at Quincy, and also of the international union."

Henry Mast testifies: " Hayte said the indentures of the apprentices were not worth anything; that we should stick together and get better times down there." Again, he says : " I went to see Hayte, and told him my security was afraid, and that I wanted to go back to work. He said I should wait, and not go back to work. My security was Izenstein. Hayte said he would make good what my security had to pay."

In the face of such direct and uncontradicted testimony as this, for a jury to find that there was no probable cause for the defendants to believe that the plaintiff had taken part in an endeavor to entice the defendants' apprentices from their service, shows conclusively that either they did not understand the evidence, or that they intended to disregard it. No jury would hesitate a moment to convict a man of crime on testimony so clear, positive and direct as this, and when there is added to it the previous conduct of the plaintiff, the declared object which he was bound to accomplish, the acts of the plaintiff's coadjutors of the moulders' union, in their advice

and speeches to the apprentices at their meetings and elsewhere, to say nothing of the speech by Hayte, of which one witness testifies, the money which they paid to the apprentices, and the promises which they gave of more, the assurance that a man would soon arrive with forty thousand dollars to support them in their strike, no room seems to be left for a doubt that the plaintiff and his associates were guilty of the act for which the suit was instituted.

But positive proof is not required to justify the defendants. These facts, certainly, are strong enough to prompt to such legal redress a prudent and cautious man, affording, as they do, evidence of plaintiff's participation in the act with which he and the others were charged.

It must be borne in mind, that on the proof showing a concert of action between the plaintiff and his associates of the union, to accomplish the unlawful end which they did accomplish, then the acts and declarations of either of them became the acts and declarations of all, and Hayte was responsible for whatever was done by either of his associates in furtherance of the common object.

It is needless to pursue the discussion further, of a subject which seems to us so plain. It scarcely admits of discussion. We have chosen to place our decision of this case solely upon the evidence, without discussing the questions raised on the instructions. However high may be our respect for the verdicts of juries, we cannot believe it our duty to enforce such as are so manifestly wrong as we think this to be. To do so would be lending ourselves to the infliction of wrong rather than the vindication of the right.

We do not think the evidence sustains this verdict. We think probable cause existed for the institution of the suit by appellants, and for the arrest of appellee, and believing so, we must reverse the judgment and again remand the cause for a new trial.

*Judgment reversed.*