### Frank Parmelee Company v. John Griffin.

#### Gen. No. 13,227.

1. INSTRUCTIONS—*rule requiring presentation of, at conclusion of evidence, construed.* The rule of the Circuit Court which requires all instructions to be presented at the conclusion of the evidence does not in its terms or scope prevent the court from giving an instruction not so presented if in the court's opinion it is proper so to do.

2. MALICIOUS PROSECUTION—*what constitutes probable cause.* Reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant in a cautious man belief of guilt, constitute probable cause.

Trespass on the case. Appeal from the Circuit Court of Cook County; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of fact. Opinion filed October 4, 1907.

**Statement by the Court.** This is an action for malicious prosecution and false imprisoment. The jury were directed to find the defendants not guilty under the count for false imprisonment and the judgment complained of was rendered upon the verdict finding appellant guilty under the first count of the declaration, charging malicious prosecution.

The action was brought against appellant and against H. C. Frese and Charles A. McCulloch who were employees of appellant. The first count of the declaration, after usual averments in regard to the plaintiff's good name, charged that the defendants, contriving and maliciously intending to injure the plaintiff in his good name, caused him to be imprisoned for a long space of time; that defendant Frese on the 3rd day of June, 1903, appeared before a justice of the peace in Cook county and falsely, maliciously and without any reasonable or probable cause charged the plaintiff and one Simon Cooper with having feloniously stolen a certain trunk; that said last named defendant falsely and maliciously caused the said justice to grant a warrant for the arrest of the plaintiff and said Simon Cooper; that afterward on the 6th day of June, 1903, the defendants wrongfully procured the arrest of the plaintiff and caused him to be imprisoned for eight days; that afterwards on the 13th of June, 1903, the defendants wrongfully caused the plaintiff and one Cooper to be carried before the said justice and to be then discharged out of custody. The declaration contains the usual phraseology charging that defendants secured the warrant, contriving and maliciously intending to injure the plaintiff, to bring him into public scandal and disgrace and to cause him to be imprisoned for a long time and thereby to oppress and ruin him.

There is evidence tending to show the following state of facts. The plaintiff was the son of a farmer living in the neighborhood of Paxton, Illinois. After he was twenty-six years of age he states that he engaged for a time in a furniture business at Paxton and afterwards conducted a meat market. He was not successful in either of these occupations, and in February, 1903, with about $80 or $100 left of his original capital furnished him by his father came to Chicago to seek employment. He seems to have been somewhat addicted to the use of intoxicating liquor while in Paxton and neglected his business there at times as a result of such habit. There is testimony, however, tending to show that

his general reputation for honesty and integrity in Paxton was good.

In Chicago the plaintiff obtained irregular employment with the defendant, the Frank Parmelee Company, and with the Knickerbocker Ice Company. , He was employed by the former concern whenever they wanted an extra man to drive a baggage wagon or "bus." He says he would go to the barn in the morning and if there was anything for him to do he would go out as a driver, but that "there were lots of mornings" when there would be nothing for him to do. His earnings all told from the Parmelee Company and from the ice company for the four months after he came to Chicago, until the arrest complained of, were apparently less than $60. He states that he was not a hard drinker when he came to Chicago, but it appears that about six weeks before the arrest his wages were garnished by a saloonkeeper for a bill of $14, and he owed "some small amounts to three or four saloons along Halsted street for liquor bills," at the time of his arrest. He roomed a part of the time with a man who lived over a saloon, and his associations seem not to have been of the best during this period of his career.

Upon the 31st of May, 1903, he met the defendant Frese who was an employee of the Parmalee Company, having charge of the baggage department. This was Sunday and Frese told the plaintiff to "come down to the barn in the morning," that he had a load for him. The next day, June 1st, plaintiff hitched up a team and having no helper, was told to "get one some place." Plaintiff looked around and says he "ran into a stranger" who turned out to be Cooper, the man subsequently arrested upon the same warrant with plaintiff. They drove to the Wabash train tracks, as directed, and found there three other teams and six men, apparently employees of the Parmelee Company. About fifteen minutes later the defendant Frese arrived and also one Breitenbach, whom plaintiff designates as "the property man of the 'Babes in Toyland.'" The latter opened the car which contained the property of the "Babes in Toyland" Theatrical Company, as well as personal baggage of members

of that company, which was about to exhibit in Chicago.
There were, it is said, some seventy or eighty trunks in the
car, together with a "lot of crated goods." These crates
were loaded on to the first wagon, leaving three other wagons
to take the other baggage or trunks. Breitenbach had a list
of the baggage in the car, which he was examining and look-
ing for the names on the different pieces of baggage. Frese
suggested that some of the drivers help in this, and Breiten-
bach, who had two copies of the list, handed one to plaintiff
who read from the list, and with the other drivers began
to separate the baggage into separate piles so that each team
could take the baggage going in the direction assigned to
such team. On the list that plaintiff held he came to the
name "Belle Robbins." He says they looked for a trunk
with that name on it and could not find it, whereupon Breit-
enbach said, "That must be Robinson." Plaintiff says they
looked for a Robinson trunk and could not find any. There
is other testimony, however, tending to show that a trunk
bearing the name "Belle Robinson" was found, that it was
tagged to go to the Victoria Hotel and that it was among
those loaded upon the wagon in charge of plaintiff and his
helper Cooper. Plaintiff states that when his wagon, which
was the last to leave, was about loaded Mr. Frese and Mr.
Breitenbach left, telling him and Cooper to put on their
wagon the trunks remaining in the car and take them to
their destination. Plaintiff says they did this, and returned
to the Parmelee Company's barns between twelve and one
o'clock. This was Monday, June 1, 1903. The next day
plaintiff called at the Parmelee barns and received what
pay was due him, $1.50. The same day he went to the
Knickerbocker Ice Co., where he says he was told they might
use him the next day; but the next day, Wednesday, he was
told that there was no work for him there and would not be
for some days. He thereupon drew what money was due
him and on Thursday, June 4, 1903, went back to Paxton.

Meanwhile Miss Belle Robinson, a member of the theatri-
cal company, complained to Breitenbach that she had not re-
ceived her trunk, and on Wednesday, June 3rd, Breitenbach

Frank Parmelee Co. v. Griffin.

called on defendant Frese, told him the Robinson trunk could not be found, and he wanted Frese to trace it for him. Together they got into a buggy and visited different hotels to see if by mistake the trunk had been left at some hotel other than the Victoria. They then went to the west side to find plaintiff and Cooper. Not finding either of them at the barn of the Parmelee Company, they went to Nichols' saloon. They testify that the proprietor when informed they were looking for plaintiff and that a piece of baggage was missing said, "That cheap thief has got it"; and also said that plaintiff owed him money, that he had been obliged to attach plaintiff's wages with the Parmelee Company and that plaintiff was a drinker. Frese was told he might find plaintiff in Farrell's saloon. There the proprietor said he would like to find plaintiff himself because "he owes me some money." Frese obtained the help of one Baker who had charge of the lost baggage department of the Parmelee Company, and he too was unable to find any trace of the lost trunk. Frese then called on Lieutenant Andy Rohan of the detective department of the police force of the city, and the latter with Officer Qualey visited the pawn shops. Afterward with Officers Ryan and Qualey, Frese and Baker went to the west side to try to locate plaintiff. They visited the place where he had formerly roomed and were told that he had not been there for about a week. Officer Qualey found there a paper bearing the name "John Griffin, Paxton, Illinois." The parties returned to Lieutenant Rohan's office and talked the matter over with him. From there Frese went to the office of the justice of the peace and obtained a warrant charging the plaintiff and Cooper with larceny. This he did on his own responsibility, not having talked with any officer of the Parmelee Company by which he was employed in regard to any criminal prosecution.

Friday evening, June 5th, plaintiff was at Paxton calling on the young woman who has since become his wife. While there the city marshal of Paxton called and told plaintiff that Mr. Crowe wanted to see him outside. Mr. Crowe was sheriff of that county. Stepping out the plaintiff was in-

formed by the sheriff that he had a telegram for his arrest. The telegram was dated June 5th, addressed to the sheriff of Ford county and was as follows: "I hold warrant for John Griffin for larceny of a trunk containing woman's wearing apparel valued at $1,500. His father lives in Paxton. If arrested wire me. Francis O'Neill, Superintendent of Police."

Plaintiff and the sheriff went to the latter's house, plaintiff having expressed his willingness to go to Chicago on the first train. Taking a late train that night the two, accompanied by a former partner of the plaintiff, reached Chicago the morning of Saturday, June 6th, and went to the office of the Parmelee Company. It was early and "there was nobody but some of the clerks there." From there they went to police headquarters. When Officer Ryan came in he produced the warrant. The sheriff says he went back to the office of the Parmelee Company and saw the defendant McCulloch. He was there repaid his actual expense of "car fare and costs." It was suggested that plaintiff with Officer Ryan and with Baker, the said employee of the Parmelee Company who looked after lost baggage, go over the route where plaintiff had delivered trunks the day the missing trunk disappeared. This they did without result and returned to the Parmelee office. Plaintiff was subsequently taken over to the city hall and locked up. From there he was transferred to the Harrison street station by police officers.

Monday morning he was brought before the justice of the peace by whom the warrant had been issued. When the case was called plaintiff testifies that defendant Frese asked that the case be continued one week. Officer Ryan told the justice that it had been learned that two trunks had been shipped from West Madison street to Paxton, and they wanted time to look them up. Plaintiff testifies that the attorney of the Parmelee Company said they were not ready. This is denied by said attorney and other witnesses for the defense, who testified that the said attorney took no part whatever in the proceedings. The testimony as to this, as

Frank Parmelee Co. v. Griffin.

well as to other matters, is irreconcilably conflicting. The case was continued, however, by the justice and the plaintiff remanded to jail where he remained until Saturday, June 13th, when he was again brought before the justice, and thereupon the attorney of the Parmelee Company stepped forward and said "on behalf of Mr. Frese I ask that these prosecutions be *nolle prossed.*" Plaintiff was thereupon discharged, and subsequently brought this suit.

At the conclusion of the evidence the court instructed the jury to find the defendants not guilty under the second count of the declaration which charged false imprisonment. The court also instructed that there was no evidence the defendant Frese was authorized by the Frank Parmelee Company to swear out a warrant at or before the time it was so sworn out.

The jury found the Frank Parmelee Company guilty as to the first count of the declaration and assessed the plaintiff's damages at the sum of $6,500. From this amount the plaintiff remitted $2,500 and judgment was entered for the remaining $4,000. The jury made no finding as to the defendant's Frese and McCulloch and judgment was entered in their favor.

MUSGRAVE, VROMAN & LEE and MCCORDIC & SHERIFF, for appellant.

FRED A. BANGS and C. S. SCHNEIDER, for appellee; JAMES JAY SHERIDAN, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant contends that the verdict and judgment are against the weight of the evidence, that the burden rested on the plaintiff to establish by a clear preponderance of evidence, first, a want of probable cause for procuring the warrant and causing the arrest of the plaintiff upon the charge of larceny, and second, that the defendant was actuated by malice. It is insisted plaintiff has failed to do either of these things and that the judgment cannot be sustained.

There is no doubt that where as in Ross v. Innis, 35 Ill., 487–511, a powerful house made an "infamous charge which they knew was unfounded" and wrongfully prosecuted a poor and friendless young man, or where as in Reno v. Wilson, 49 Ill., 97, "there was no semblance of criminal conduct and no act done which could be tortured into crime" and the prosecution was conducted "to gratify bad passions which causelessly excited appellant had not the firmness and discretion to restrain," or where as in Chapman v. Cawrey, 50 Ill., 517, "no crime was committed and no just suspicion of one" existed, or as in Krug v. Ward, 77 Ill., 610, where the criminal code had been "resorted to for the gratification of personal malice or the attainment of dishonorable personal ends," in such cases it is fitting that parties so making improper use of the criminal code should be punished in damages in vindication of the law and as an example to others. But it is also true that actions of this character are not to be permitted to discourage criminal prosecutions instituted in good faith upon probable cause, without malice against one honestly believed to be guilty of a criminal act. As said by Mr. Justice Breese in Israel v. Brooks, 23 Ill., 575–576: "Few men could be found who would be willing to originate a criminal prosecution, if on failure to establish the guilt of the accused, he himself was to be subjected to an onerous and expensive suit." To the same effect is Ames v. Snider, 69 Ill., 376–379, where it is said that "if the prosecuting witness is to be mulcted in damages for an honest error in judgment, few prudent men would run the hazard of instituting a criminal prosecution. It is sufficient if there is probable cause whether the accused is in fact guilty or not." It is not enough therefore to entitle one to recover damages in a suit for alleged malicious prosecution that he has been arrested and imprisoned charged with a crime and subsequently discharged for want of prosecution or acquitted upon a trial. If the prosecuting witness had probable cause for believing in his guilt and acted without malice, the accused is not entitled to recover damages, whatever the result of the prosecution, and the burden is upon the plaintiff in such action to

show affirmatively that there was a want of such probable cause.

In the present case the defendant Frese swore out the warrant upon which plaintiff was arrested. Frese was in charge for the Parmelee Company of the transfer of scenery and baggage for theatrical companies. He obtained the warrant after the consultation with a police officer of the city, and after an effort, assisted by a fellow employee of Parmelee Co. and by two police officers, to find the plaintiff or obtain some trace of the missing trunk, believed to be in plaintiff's possession. The jury found in answer to a special interrogatory that the Frank Parmelee Company did not authorize Frese to institute the criminal proceedings against the plaintiff. They were instructed by the court that there was no evidence of such authorization. Plaintiff's attorneys complain of said instruction and claim that there was evidence which tended to show and did show by a preponderance that Frese was so authorized. If there is such evidence our attention has not been called to it and we have failed to discover it in the record. We do not regard the instruction as erroneous. The rule of the Circuit Court which requires all instructions to be presented at the conclusion of the evidence does not in its terms or scope prevent the court from giving an instruction not so presented if in the court's opinion proper so to do. The jury found, however, in answer to special interrogatories that "Frese acting as agent for the Frank Parmelee Company" had no probable cause to believe plaintiff guilty of larceny when he instituted the criminal proceedings complained of, and that he was actuated by malice in causing plaintiff's arrest. The jury also found specially that the defendant Parmelee Company subsequently ratified the criminal proceedings instituted by Frese.

The question, however, as to whether the Parmelee Company assumed liability for the acts of Frese in the institution and prosecution of the criminal proceeding or subsequently ratified the conduct of Frese in that connection, is subordinate to the inquiry whether the evidence justified the finding

of the jury that Frese had no probable cause to institute said criminal proceeding. If he had probable cause, then it is immaterial whether the appellant company ratified his action in that respect or not, since in either event no recovery can be had against either Frese or the company. The question is therefore, does the evidence justify the conclusion that there was no "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged?" Davie v. Wisher, 72 Ill., 262–266. In Jacks v. Stimpson, 13 Ill., 701, it was said "an honest belief of the guilt of the accused, founded on circumstances tending to show that he has committed a criminal offense, negatives the idea of a want of probable cause for the prosecution." In Collins v. Hayte, 50 Ill., 353–354, the court said: "Good faith on the part of the prosecution is always an important if not a vital element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt when it would have been wanting in the perception of a person of ordinary prudence and judgment." The court further said in the last mentioned case, that there "are few questions of law more difficult of comprehension by a jury than those which govern trials for malicious prosecutions. It seems difficult for them to appreciate if the plaintiff was really innocent of the charge for which he was prosecuted that he still ought not to recover * * * where there is reasonable or probable grounds to believe in the existence of guilt." See also Harpham v. Whitney, 77 Ill., 32–38; Palmer v. Richardson, 70 Ill., 544–545–6; Young v. Lindstrom, 115 Ill. App., 239–243.

If it be true in the case at bar, as claimed by appellant's counsel, that the preponderance of the evidence tends to show the missing trunk was in fact found in the car and turned over to plaintiff and his helper—the witness Cooper—for delivery at its destination and that it was not so delivered nor otherwise accounted for, such fact if sufficiently proven would certainly go far to justify the defendant Frese in an

honest belief in the guilt of the accused and in the institution
of criminal proceedings.    Plaintiff testifies that in company
with other drivers and their wagons he was present at the car
in which the missing trunk should have arrived.    He was
given a copy of the list of the baggage supposed to be in the
car.    On that list was the name "Belle Robbins."    He
says he and others looked for a trunk bearing that name,
but did not find it, that Breitenbach, the agent of the theatri-
cal company having charge of the baggage contained in the
car, said "That must be Robinson"; that they looked for a
Robinson trunk and did not find it.    Breitenbach on the
other hand had testified that the Robinson trunk was there
and that it was found there.    He says the name on the list
was "Robbins" but on the trunk it was "Robinson," and
that owing to the difference between the name shown on the
list and the name on the trunk, there was some discussion
about it, but that he had the Robinson trunk tagged to go to
the Victoria Hotel, and that plaintiff helped him.    Frese
testifies that the Robinson trunk was there and that he had
it set aside with instructions to have it put on plaintiff's
wagon, which was to carry the baggage going in that direc-
tion.    He testifies that after being arrested plaintiff said
that he remembered the trunk and where he delivered it, and
that he could "go around and show you" where the baggage
in his charge had been delivered.    In this Frese is partly
corroborated by Officer Qualey who testifies that plaintiff
said at that time that he "had seen the trunk set out on the
platform," referring to the trunk in controversy.    The wit-
ness Hughes describes the Robinson trunk which he says
was in the car and was set aside to go to the Victoria Hotel,
and states further that when plaintiff's wagon was nearly
loaded, he called plaintiff's attention to the trunk and swung
it on to the back end of plaintiff's wagon.    Another witness,
Canada, testifies that he saw the trunk in the car.    As
against the positive testimony of these five witnesses, there
stands, first, the testimony of plaintiff that the trunk was not
found in the car, notwithstanding the evidence tending to
show that after his arrest plaintiff admitted to Officer Qualey

and to Frese in the presence of others, some of them friends of the plaintiff, that he saw the trunk in the car. None of these friends of the plaintiff was called to deny that plaintiff did so state. Second, there is the evidence of Cooper, plaintiff's helper, who also has a suit pending against the defendants for his arrest at the same time. He testifies that the Robinson trunk "was not seen at all," that he "never saw a trunk by the name of Robinson." His testimony to this effect is, however, very materially weakened by his answer to a previous interrogatory. He had been asked if he helped that day "in the search for the Robinson trunk." His answer was "No, the others really placed the trunk to one side and said, 'shove this trunk on that side, it goes over there,' and I was a new man at the place. I did not look for the name Robinson." In view of the positive testimony referred to that the Robinson trunk was actually placed to one side as Cooper states, his testimony to that effect is at least corroborative of the witnesses for the defense and tends to show that the Robinson trunk was in the car, notwithstanding subsequent denials.

It is urged that two of the lawyers acting in plaintiff's behalf testified that Frese stated in their presence "that he only believed Griffin had a guilty knowledge of the missing trunk," that he "did not believe John Griffin had taken the trunk," and "that he thought someone must have doped John and that he believed that John might know where it was." This is called "a confession from the lips of Frese" that there was no probable cause for plaintiff's arrest. We do not so understand the meaning of the alleged statement. It was at the most a mere expression of opinion that though plaintiff might not have taken the trunk himself, he at least had "a guilty knowledge" of the taking. It purports to have been made to a couple of plaintiff's legal representatives in a casual conversation, the whole of which is not given. It was a mere speculation at the best and not entitled to serious consideration as evidence of a want of probable cause for the arrest. Frese apparently acted not only upon his own knowledge as to the trunk having been found in the car, but

Frank Parmelee Co. v. Griffin.

upon corroborative information from other witnesses, not only that the trunk was there but also that it had been turned over to plaintiff for delivery and had not been delivered. If he believed and in good faith acted upon such information, he was acting not without probable cause. Anderson v. Friend, 71 Ill., 475–480. As we said in Knickerbocker Ice Company v. Scott, 76 Ill. App., 645–648, "if appellants had reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant such belief in a cautious man, then there was probable cause." In addition to the evidence referred to, there was the additional information clearly proven and substantially uncontradicted that at that time plaintiff's habits and associations were not of a character such as, in view of the circumstances attending the disappearance of the trunk, would be likely to exempt him from suspicion.

It is true, as stated by plaintiff's attorneys, that malice may be inferred from want of probable cause where the circumstances are inconsistent with good faith on the part of the prosecutor and where such want of probable cause has been clearly proven. Comisky v. Breen, 7 Ill. App., 369–372. It is vigorously asserted by plaintiff's attorneys that the defendants were actuated by malice; but unless it was malicious to act in good faith upon the belief that there was probable cause to believe plaintiff guilty of the offense charged, we find no evidence of its existence. There was, so far as appears, no desire to injure the accused. There is evidence tending to show that some of the defendants acted upon a positive belief in his guilt; but it can scarcely be said that appellant was actuated by malice in a prosecution which it did not authorize and of which it had no knowledge until afterward. There are in this case, as frequently happens, expressions in testimony on both sides which may be criticised and upon which charges of inconsistency, untruthfulness or lack of reliability may be based. We cannot undertake to follow counsel in discussing these alleged inconsistencies. We have examined the whole testimony with care and devoted all the time we deem necessary to the statement of

our conclusions and the grounds upon which they rest. We are of the opinion that plaintiff has failed to show a want of probable cause for his arrest, or the existence of malice in the institution or prosecution of the criminal proceeding, and that the verdict and judgment are against the great preponderance of the evidence.

In view of this conclusion it is unnecessary to consider other questions argued in the briefs. The judgment of the Circuit Court must be reversed, with a finding of facts.

*Reversed with finding of facts.*