Maximino Galarza, Appellee, v. A. A. Sprague et al., Appellants.

Gen. No. 38,595.

Opinion filed March 23, 1936.

GARDNER, FOOTE, MORROW & MERRICK, of Chicago, for appellants; WALTER M. FOWLER, of Chicago, of counsel.

HAROLD L. LEVY and LAWRENCE S. JACOBSON, both of Chicago, for appellee; LAWRENCE S. JACOBSON, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendants for false arrest and malicious prosecution. There was a verdict and judgment in plaintiff's favor for $1,000 and defendants appeal.

The record discloses that defendants are receivers of the Chicago, North Shore and Milwaukee Railroad Company, a corporation which maintains a railway station at the northwest corner of Broadway and Wilson avenue, Chicago. The station is used by the railroad company in the customary manner; certain parts of it are leased for business purposes.

On the afternoon of January 17, 1933, Maximino Galarza, also known as Max Dumont, went to the station to keep an appointment with a person he was to meet at the station. While waiting for this person to appear he met a friend and they talked to a young lady who was conducting a popcorn stand in the station for her employer. The friend left in about five minutes and plaintiff testified that he continued to talk to the young lady for about 25 minutes, when one of defendants' employees in the station, McArdle, said to him, "Can you get this girl a better job than she has now?"; that plaintiff thought the man who addressed him was the employer of the young lady and he apologized; that thereupon McArdle "ordered me out in a sharp tone of voice and I told him I resented his tone of voice; that I was no bum, and then he says, 'If you don't like it I will throw you in the can.' I said, 'If you are such a big shot, go ahead.' Then an officer was coming in the place of business . . . and he called him over and I was taken into custody" by a police officer who gave plaintiff permission to go to his bank to see if he could get money for bail; finding the bank closed plaintiff went to a barber shop to see if he could get assistance and was then taken to the station and locked up until some time during the forenoon of the following day when, the evidence shows, he made bail and the case was continued and set for hearing on January 21st. When defendant was taken to the station on the 17th, McArdle signed a *quasi*-criminal complaint charging defendant with disorderly conduct in violation of sec. 4210 of the Revised Chicago Code of 1931, in that Dumont was "annoying a woman." When the case came up on January 21st for hearing, the complaint was amended by the city prosecutor so as to charge that defendant "then and there wilfully and unlawfully engaged in a quarrel with this affiant," and the amended complaint was then sworn to by McArdle. At that time defendant was represented by counsel;

he waived his right to trial by jury, and witnesses were, sworn, some called by the city and some by defendant. At the conclusion of the hearing the court found defendant guilty and assessed a fine of $25. Defendant prayed an appeal which was allowed and the appeal bond was fixed at $100, bill of exceptions in 30 days. Afterward, on February 15, 1933, counsel for defendant served a notice on the city attorney that he would, on February 17th, at 9:30 o'clock in the morning, appear before Judge Edelman of the municipal court (who had tried the case) at the branch of the municipal court of Chicago to be held in the Town Hall located on the northwest side of the city, and ask that the judgment be vacated; that in support of the motion he would present defendant's affidavit and the affidavit of the young lady in charge of the popcorn stand in the railway station. On February 17th an order was entered by the municipal court continuing defendant's motion to February 20th, and the record discloses that on that day the municipal court entered the following order: "This cause coming on for hearing upon the motion of the defendant heretofore entered herein to vacate judgment of January 21st, 1933, and the Court being fully advised in the premises sustains said motion.

"This cause coming on in regular course for trial, the plaintiff though called in open Court comes not, and fails to prosecute this suit. Wherefore, for want of prosecution of this suit, it is ordered that said plaintiff be nonsuited, and that this suit be and it hereby is dismissed out of this Court, and that said defendant be and hereby is discharged."

About seven months afterward plaintiff brought the instant suit to recover damages for false arrest and malicious prosecution.

The evidence shows that on the trial of the *quasi*-criminal charge of disorderly conduct in the municipal court on January 21, 1933, McArdle (who was em-

ployed by the receivers in the instant case as master at the Wilson avenue station), and Iverson· (who was also employed by the receivers as chief special agent) testified for the city in the prosecution of Galarza, or Dumont, as he was named in the complaint. Dumont testified in his own behalf, and the young lady in charge of the popcorn stand who was subpoenaed by Galarza or Dumont, was called by both sides and testified. At the conclusion of this evidence the municipal court found Dumont guilty and imposed a fine of $25.

The evidence further shows that when defendant's motion to vacate the judgment in that case came on for hearing on February 17th and again on February 20th, neither McArdle, Iverson nor the young lady appeared. The uncontradicted evidence also is that neither McArdle nor Iverson was notified or had any knowledge that defendant was to make such motion. And we think it also appears from the order entered by the municipal court on February 20th (which we have above quoted) that no one appeared on behalf of the city on either of these two occasions. The only notice that was given was to the city attorney that a motion would be made to vacate the judgment. There was no notice that if the motion were allowed the case would be immediately put on trial.

We have heretofore given the substance of plaintiff's testimony, except he further testified that after McArdle spoke to him, Iverson, who had come into the station, came over, and at about that time two police officers came into the station and were requested by McArdle to place Dumont under arrest, which was done. In the instant case McArdle and Iverson gave testimony to the effect that after McArdle asked Dumont to leave the station, the latter swore at McArdle, and about 75 people who were in the station gathered around to see what the trouble was; that thereupon the two police officers took Dumont into

custody. These two witnesses further testified that Dumont, or Galarza, had been talking to the young lady at the popcorn stand for about two hours. Dumont denied that he swore at McArdle, and said he was talking to the young lady only about 25 minutes when accosted by McArdle. Plaintiff in the instant case also called a court reporter who had taken the testimony on the trial in the municipal court, from which it appeared that McArdle and Iverson there testified Dumont had been talking to her about one hour.

It is the law that when one in good faith submits facts fairly to an attorney of standing or to a judge, obtains advice as to whether a person who is supposed to have committed an offense should be prosecuted and, acting upon such advice, institutes proceedings of a criminal or *quasi*-criminal nature against the party, such facts will constitute a complete defense to an action for false arrest and malicious prosecution, although the person charged is not, in fact, guilty. *Hanneman v. Minneapolis, St. P. & S. Ste. M. Ry. Co.,* 248 Ill. App. 196; *Morrow v. Carnes,* 108 Ill. App. 621; *Neufeld v. Rodeminski,* 144 Ill. 83.

Defendants contend that in the instant case the record discloses McArdle fairly explained the facts to the city prosecutor and to the judge of the municipal court who certified on the complaint that he had examined the complaint and the person presenting it and was satisfied that there was probable cause for filing the complaint, and—as we understand the argument—that these facts constitute a complete defense to the instant case. The difficulty with this contention is that the evidence shows, we think, that the facts were not explained to the city attorney or to the judge of the municipal court until after Dumont was arrested.

Defendants further contend that in any event the judgment cannot stand because plaintiff in the instant case was tried and convicted in the municipal court,

and although that conviction was later set aside by the municipal court, it is *prima facie* evidence that there was probable cause for arresting Dumont and filing the complaint against him. And since there is no evidence in the record that such conviction was obtained by fraud or unfair means, the judgment of the municipal court, finding the defendant guilty, is a bar to the instant case, citing *McElroy v. Catholic Press Co.*, 254 Ill. 290, and other cases.

In reply to this contention counsel for plaintiff in the instant case say the rule contended for does not apply except where a judgment of conviction has been reversed by a court of review, and since the judgment of the municipal court was vacated by that court, the rule is not applicable. We think the contention cannot be sustained. If one explains fairly the facts to a prosecuting attorney or to a judge concerning an offense claimed to have been committed by the person he seeks to prosecute, and is advised that such a prosecution should be instituted, this is a complete defense to an action for malicious prosecution although the person charged was not guilty. *Hanneman, Morrow* and *Neufeld* cases, above mentioned. *A fortiori* should such a person be immune to a claim for damages in a suit for malicious prosecution where the criminal or *quasi*-criminal case has been heard by the court and the defendant there found guilty.

Whether a person who has made such charges explained all the matters in good faith to the attorney or the judge, is often a question of fact. *Hanneman v. Minneapolis, St. P. & S. Ste. M. Ry. Co.*, 248 Ill. App. 196.

In the instant case counsel for plaintiff say that even if the rule contended for by defendants applies, "there is ample evidence in the record of false testimony, corrupt practices and unlawful and unjustifiable means on the part of the persons procuring the conviction to

rebut successfully all evidence of probable cause.'' The evidence shows plaintiff went to the station to keep an appointment he had theretofore made. He testified that while waiting he talked 20 or 25 minutes to a young lady employed at a popcorn stand in the station. McArdle and Iverson testified that he talked to her about two hours, while there is some evidence that these two witnesses testified in the municipal court that plaintiff talked to the young lady about one hour. We think this evidence shows that plaintiff was loitering in the station and McArdle was entirely warranted in telling him to move out of the station. Upon his refusal to do so a disturbance arose. Under these circumstances we see no evidence of maliciousness in having plaintiff placed under arrest by the police officers. We think the *prima facie* presumption of probable cause, in believing that plaintiff in the instant case was guilty of disorderly conduct which resulted in finding him guilty in the municipal court, was not overcome. The evidence adduced in the instant case does not tend to show the conviction was obtained by false testimony, corrupt practice or unjustifiable means. Little weight is to be given to the fact that the municipal court afterward set aside the judgment of conviction, the record showing that none of the parties interested in the prosecution of the case was notified that a motion was to be made to vacate the judgment of conviction. And no notice was given to anyone that in case that court did vacate the judgment of conviction, the matter would be immediately disposed of. But even if the judgment of conviction was properly vacated and set aside by the municipal court, this would not show want of probable cause for the prosecution. *Glenn v. Lawrence,* 280 Ill. 581.

As said in *Ames v. Snider,* 69 Ill. 376, which was an action for malicious prosecution (p. 379): ''A party ought not to be held guilty when he sets in motion a

criminal prosecution, simply because he fails to convict the person accused, or indeed in every case where he fails to show the party was guilty. . . . It is sufficient if there is probable cause, whether the accused is in fact guilty or not.''

To the same effect is *Collins v. Hayte,* 50 Ill. 353, where the court said (p. 354) : ''Our experience teaches us there are few questions of law more difficult of comprehension by a jury than those which govern trials for malicious prosecutions. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover.''

For the reasons stated the court should have granted defendants' motion for a judgment in their favor notwithstanding the verdict of the jury. Sec. 68, Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 196.

The judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

McSurely, P. J., and Matchett, J., concur.