SAMUEL CARSON v. GEORGE EDGEWORTH.

*Malicious prosecution.*

An unfounded prosecution cannot be justified, or the prosecutor's malice disproved, by evidence of offenses committed by the plaintiff other than those for which he was prosecuted by the defendant.

Malice is not implied from an unfounded prosecution, but it may be inferred from the want of probable cause for it.

Error to Saginaw. Submitted Jan. 23. Decided April 8.

TRESPASS ON THE CASE. Defendant brings error.

*Albert Trask* and *Wm. H. Sweet* for plaintiff in error.

*Albert R. McBride* for defendant in error. Evidence of matters outside of the complaint on which a prosecution is based is inadmissible in an action for malicious prosecution, *Josselyn v. McAllister* 25 Mich. 45; Cooley on Torts 183; 4 Wait's Actions 344.

COOLEY, J. Carson brought suit against Edgeworth for prosecuting him maliciously on two unfounded charges; the one for breaking down Edgeworth's shade trees, April 13, 1879, and the other for disturbing a religious meeting

43 MICH.—31.

on the same day. On the trial the plaintiff, as a witness on his own behalf, gave evidence tending to prove that he was twenty-one years of age and upwards; that one James Tuttle was fifteen years old; that together they went from their homes in Corunna to Chesaning, April 12, 1879, stopping there over night; that on the next day, which was Sunday, they left Chesaning about nine o'clock in the morning to go about ten miles northwest, their road passing by a school-house where a Methodist quarterly meeting was carried on by the presiding elder and three preachers. Plaintiff, by himself and persons at the meeting, gave evidence tending to prove that plaintiff and Tuttle made no noise or disturbance at or in passing the school-house, and that the religious performance thereat was not disturbed by any noise whatever from without. Plaintiff also gave evidence tending to prove that in passing defendant's house Tuttle stepped to the outside of the road and broke down two small shade trees, the plaintiff then being ten or twelve feet beyond, walking in the road; that he looked around as Tuttle was breaking the trees and remonstrated with him, telling Tuttle to come along and mind his business; that the next day he and Tuttle were arrested near St. Charles by officer Thayer, defendant being with him; that Thayer refused to tell what it was for; that the officer and defendant then took plaintiff to defendant's house and there locked him up in a room all night. Plaintiff further gave evidence tending to prove that while so confined in defendant's house Thayer advised them to settle with defendant, who wanted $25, and they gave him their watches in pledge for the sum the next morning, and were released by the officer by defendant's order without being taken before the justice who issued the warrant, which the officer left with the defendant, they being there told by the defendant that he wanted that sum to settle for the shade trees and a buggy spring broken in going to arrest them; that Carson demanded his watch, and that defendant then told

plaintiff that he knew Tuttle broke the trees, and that plaintiff had done nothing for which he could be arrested, but that he had been in bad company.

Plaintiff further gave evidence tending to prove that the next day he went to defendant and demanded his watch; that defendant told plaintiff to go to Chesaning and he would meet him there and let him have the watch; that plaintiff did as requested, and while waiting for defendant at Chesaning was arrested on complaint of defendant for disturbing a religious meeting the previous Sunday. That plaintiff was taken before a justice of the peace, the trial continued for a week, and plaintiff by the magistrate (who refused the plaintiff's father as bail) was committed to Saginaw county jail where he was imprisoned for about a week, and from its uncleanliness was covered with vermin; that he was taken back to the justice's office, tried and acquitted. Plaintiff also gave evidence tending to show the actual damage sustained by his arrest and imprisonment, and also by persons living near him in Corunna that his general character was always good, and that he was a respectable, church-going man. Also that until the second complaint and arrest defendant had made no pretense that the meeting had been disturbed. He also gave evidence tending to prove that the defendant, previous to taking out the warrant for plaintiff and Tuttle, and on April 14, 1879, went to Justice Dredge at Chesaning and wanted a warrant for two men, meaning the plaintiff and Tuttle, and on being asked by the justice what they had done, replied that they passed his house the day before and one of them broke down two shade trees; that on being advised by the justice that both could not be held, and he had better have but one arrested, defendant replied he would have both arrested; thereupon the justice refused to draw the complaint; that defendant left and returned with complaint, and Dredge issued the warrant and gave it to defendant, and it was never returned; that a few days after defendant came to Jus-

tice Dredge and told him the parties had settled, leaving their watches; that Dredge told him the boys, if they had friends, might make him trouble for the way he had treated them; that during all the time defendant said nothing to Dredge about the boys disturbing the meeting, or any meeting being disturbed. Plaintiff further gave evidence, by one Garrett Post, that defendant, April 15th last, told witness that he had plaintiff and one Tuttle arrested; that witness told him that plaintiff was a quiet and peaceable young man, who never drank a drop of liquor or did anything out of the way; that defendant said plaintiff Edgeworth had done nothing, but the boys had settled the matter and he let them go; that on the seventeenth of April one of the boys was arrested at his house on the second warrant; that defendant was there, and pointing to the boy who was arrested said, "I will send them where the dogs won't bite them." Plaintiff gave further evidence of persons at said religious meeting that there was no noise or disturbance at it, and that after it was out the presiding elder and two other preachers talked about what a quiet, orderly meeting it had been, and no reference was made to any disturbance. Plaintiff gave further evidence tending to prove that when Tuttle and plaintiff got one mile and thirty rods west of the school-house that morning, about 11:30 o'clock, they were conducting themselves in an orderly manner.

The defendant, on his part, gave evidence tending to show that he did not know when he took out the warrant for the destruction of the shade trees, that the act was that of Tuttle alone; that the conduct of both plaintiff and Tuttle was disorderly when they were approaching and passing the place where the religious meeting was being held, and that it attracted the attention of those who were taking part in the meeting; that after the first prosecution was settled up, defendant for the first time learned from his daughters and a niece then at his house, the full extent of the misconduct of plain-

tiff and Tuttle at the time when the shade trees were destroyed. One of the daughters was then called as a witness on his behalf, and was asked what the young men did when passing the house? The question was objected to, and counsel for defendant explained that it was proposed to show by this witness that plaintiff was an indecent and obscene person, and that both he and Tuttle made an indecent exposure of their persons, and used insulting language to the girls in passing the house, and presented a pistol. The judge ruled out the evidence, at the same time stating that he thought the defendant had made out his justification so far as concerned the prosecution for destroying the shade trees, and he should consider that part of the plaintiff's declaration as out of the case. The defendant excepted to this ruling.

When the evidence was concluded the defendant requested the court to instruct the jury that "to maintain this action plaintiff must prove that defendant was actuated by malice. There is no such thing as a legal presumption of malice in this class of cases, and the jury must find the malice, if at all, from the facts proven; and the facts ought to be such as will satisfy any reasonable mind that the prosecution had no ground for the proceeding but his desire to injure the accused. Unless the jury find the defendant acted from motives of malice in his prosecution, and not from a disposition to punish and repress crime, plaintiff cannot recover." This request was refused, and on this branch of the case the judge charged as follows: "The second count charges the defendant with having made a complaint against the plaintiff falsely, without probable cause, and from malice and improper motives. It is very important to be determined by you whether there was in fact a disturbance, and whether there was any reason on the part of the defendant to believe that there was a disturbance, he being present at the time. The complaint was made on the 17th, four days after the occurrence, and after a settlement had been had between the parties on the first complaint. The plaintiff says from wicked and malicious motives, without probable cause to believe the

truth of the complaint, this defendant caused his arrest. Is this true? If so, then he is liable to the plaintiff for all damages which the plaintiff has sustained thereby,— such sum as you may find the plaintiff ought to recover under the instructions of the court. If he made this complaint against the plaintiff without probable cause to believe him guilty and from malicious and improper motives—if for the purpose of compelling him to settle a suit, or extort money from him, or prevent any proceeding being brought against him to recover the watch —then the plaintiff ought to recover. This, then, is the question of fact submitted to you. Determine first whether there was a disturbance or not. Secondly, whether defendant had reasonable cause to believe that such disturbance had been caused by plaintiff. If you believe the contrary and that he had no such reason to believe the plaintiff guilty, and that he instituted the complaint from improper, wicked and malicious motive, then they must recover. By malicious it is not necessary that it should be revengeful. Any wicked, malevolent purpose is malicious. It may be to avoid prosecution, or it may be to compel a settlement or extort money or any other purpose which in law is unlawful, and if so, it is malicious."

The jury returned a verdict for the plaintiff.

I. In my opinion no error was committed by the court in excluding evidence that the plaintiff and his companion behaved with indecency in passing the defendant's house. This evidence could have no tendency to show that the plaintiff was guilty of disturbing a religious meeting, and that was the only offense which was in question when the evidence was rejected. Neither, as I think, could it have any legitimate bearing on the question of the defendant's malice in instituting the second prosecution. It would rather tend to prove malice, by showing animosity, than to disprove it. The defendant finds that his family has been abused, and he thereupon proceeds to institute a criminal prosecution against the parties guilty of the abuse, for an offense alleged to have been committed at another time and place, but which as it turns out was never committed at all. Now if the immediate instigation to the prosecution was the abuse of the family, the prosecution may be referred to

the party's anger and animosity rather than to any desire to accomplish the ends of justice; but the fact that he had occasion to be angry could furnish no legitimate evidence that he instituted from proper motives an unfounded prosecution against the party who had angered him.   Neither could the fact that plaintiff misbehaved at one place furnish a motive for charging him with crime at another.   Indeed if we may wander from the immediate transaction which would come under examination in the second prosecution, and take into account the conduct of the accused party on other occasions, as furnishing ground for suspecting his guilt, it would be difficult, if not impossible, to set any bounds to the inquiry, and the arrest of a man on a baseless charge may be excused on showing that his previous behavior has at some time furnished reason for believing that he would commit the crime of which he is accused if the opportunity were afforded.   No one could be safe under such a rule, and no one could know what he would be called upon to meet when he complained of malicious prosecution.   *Oliver v. Pate* 43 Ind. 132.

II.  I am also of opinion that the charge of the court on the subject of malice was open to no well founded objection.   The charge as given required the jury to find the existence of malice as a fact; and while it is perfectly true that the law does not imply malice from an unfounded prosecution (*Dietz v. Langfitt* 63 Penn. St. 234), yet the jury may infer it as a deduction of fact from the want of probable cause.   *Burhans v. Sanford* 19 Wend. 417; *McKown v. Hunter* 30 N. Y. 625; *Green v. Cochran* 43 Iowa 544; *Flickinger v. Wagner* 46 Md. 580.   But the jury in this case had abundant evidence before them from which actual malice might be inferred.

The foregoing are the only points in the case which require attention, and I think the judgment should be affirmed.

The other Justices concurred.