GOULD *v.* GREGORY.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE—SUFFICIENCY.
    In an action for malicious prosecution on a charge of burglary, evidence considered, and *held* to justify a finding of want of probable cause.

2. SAME—MALICE.
    Malice in the prosecution of a criminal charge may be inferred from a want of probable cause therefor.

3. SAME—EVIDENCE.

In an action for the malicious prosecution of a charge of burglary, it appeared that the charge was founded upon the taking by plaintiff of a horse and a basket from defendant's barn, and that plaintiff was at the time working for a tenant of defendant. *Held*, that evidence that the contract between defendant and his tenant required defendant to furnish two teams of horses, when necessary, and such farming utensils as might be needed, was admissible, though it was conceded that plaintiff was not acting under the tenant's orders on the occasion in question.

4. SAME.

Evidence of the size of defendant's farm was admissible as bearing upon the question of the right of the tenant, and of plaintiff, as his employé, to use the horse and basket alleged to have been stolen.

5. SAME.

In an action for malicious prosecution, evidence had been admitted upon the issue of malice that defendant had stated that some one had been down to the cottages owned by him, had broken into the boathouses, and had knocked holes in the boats, and that he thought plaintiff was to blame for it. *Held*, that evidence as to the number of cottages owned by defendant was admissible.

6. SAME—CONDUCT OF COUNSEL.

In an action for malicious prosecution, it appeared from the cross-examination of defendant that, while he had owned a certain farm for many years, he did not know just how many acres it contained; whereupon plaintiff's counsel said, "The idea that a man has owned a farm 30 years, and he does not know how many acres there are!" Immediately after, defendant testified that the farm lay upon a lake; that a good deal of it was fractional; that his son owned a part of it; and that, as he had not figured it up, he could not tell within a few acres how many acres there were. *Held*, that the remark of plaintiff's counsel was not prejudicial to defendant under the circumstances.

Error to Van Buren; Carr, J. Submitted April 9, 1903. (Docket No. 27.) Decided June 15, 1903.

Case by Rhett Gould against Albert E. Gregory for malicious prosecution. From a judgment for plaintiff, defendant brings error. Affirmed.

*Coy W. Hendryx* and *Marshall L. Howell*, for appellant.

*Hammond & Hammond* and *T. J. Cavanaugh*, for appellee.

CARPENTER, J.    Defendant instituted a criminal proceeding before a justice of the peace of the county of Cass charging plaintiff with breaking and entering his barn with intent to steal a horse and a basket.    On the day set for the examination, plaintiff was discharged at the request of the prosecuting attorney.    He thereupon brought this suit to recover damages for malicious prosecution, and obtained a verdict and judgment in the lower court.    Defendant asks a reversal of the judgment of the court below on the ground that the court erred in submitting the case to the jury, and in admitting certain testimony which will be hereinafter referred to.

1. Defendant insists that the court should have directed a verdict in his favor, because (*a*) there was no evidence of want of probable cause; (*b*) the testimony conclusively proves that in making the complaint defendant acted under the advice of counsel, to whom he had stated all the material facts; (*c*) there was no evidence of malice.

The testimony clearly proved that plaintiff did, early in the morning of November 1st, let defendant's horse out of his barn, and take his basket therefrom.    For the purpose of determining whether the defendant was justified in believing that this act was done with criminal intent, a somewhat detailed statement of the facts is required. Plaintiff had for some days been employed as a hired man by one Olmsted.    Olmsted was defendant's tenant, working on shares a farm adjacent to the barn in question.    By the terms of the contract between defendant and Olmsted, the former was to furnish two teams to be used by the latter "in working the said farm, when necessary," and also such farming tools "as may be needful."    The horse in question was one that defendant had furnished Olmsted, and had been used by plaintiff as Olmsted's hired man.

On the morning in question, though the plaintiff was not being paid wages by Olmsted, he was performing services for him. According to plaintiff's testimony, what he did was this: He opened the stable door of defendant's barn, which was fastened only by a button, and let the horse, which was loose in a box stall, out into an adjoining pasture, in order that it might get food and water. He took the basket to Olmsted's for the purpose of using it, and did use it, to load potatoes. In letting the horse loose and in getting the basket, plaintiff was not acting under instructions from Olmsted. Before defendant made the complaint, the horse was in his possession. He knew that it was found loose in the road by Olmsted about 4 p. m. of the day the alleged crime was committed. He also knew the basket was at Olmsted's.

No authority need be cited to prove that these facts would not constitute probable cause. They would clearly not justify defendant in believing that plaintiff broke and entered his barn with intent to steal his horse and basket. Defendant, however, insists that these are not the facts, or, at least, that they are not the facts as he believed and was justified in believing. He insists that the horse was fastened in its stall by a halter, and that plaintiff led it away from the barn. He insists that the barn door was locked, or securely fastened. He testifies that he had an interview with Olmsted before making the complaint, and that Olmsted said he did not know which way the horse came from when he found it in the road at 4 p. m., and that when plaintiff brought the basket to his house Olmsted told him he would get in trouble. Defendant also insists that plaintiff, at the time he entered the barn, as he was informed by his son, Don Gregory, acted in a manner which would tend to convince an observer that he was conscious of wrong-doing.

Assuming that these facts constitute probable cause, we are nevertheless bound to hold that the trial court did not err in refusing to direct a verdict. Neither that court nor this court can say, as a matter of law, that defendant

believed these to be the facts. There was a marked con-
flict between his testimony and that of plaintiff as to
whether the horse was tied and the barn door fastened.
The jury, if they accepted plaintiff's testimony, could have
found that defendant never believed that plaintiff led the
horse away. There was a marked conflict, too, between
the testimony of defendant and that of Olmsted. Olmsted
denies having any conversation with defendant until after
plaintiff's arrest. Olmsted testifies that it is not true that
the first he saw of the horse the day the alleged crime was
committed was at 4 p. m. On the contrary, he testifies
that he saw the horse in the pasture field between 9 and
11 a. m.; that the horse was breachy, and he presumes that
he got into the road by jumping the fence. If the jury
believed Olmsted's testimony, defendant did not have by
any means as much evidence of plaintiff's guilt as he con-
tends.

This reasoning compels us also to decide that the court
did not err in refusing to direct a verdict for defendant on
the ground that he had fully and fairly stated the facts in
the case to his counsel; for the testimony shows—what
we should know without testimony—that the facts he
stated to his counsel were those which he insists he
believed. If the jury accepted plaintiff's testimony, they
would be warranted in saying that defendant did not
make a full and fair statement of the facts to his counsel.
Moreover, it does not conclusively appear that defendant
told his counsel of Olmsted's right to use the horse and
tools, and of plaintiff's relation to Olmsted.

Neither do we think that the court should have directed
a verdict for the defendant on the ground that there was
no evidence of malice. Malice may be inferred from want
of probable cause. *Carson* v. *Edgeworth*, 43 Mich., at
page 247 (5 N. W. 282); *Hamilton* v. *Smith*, 39 Mich.,
at page 229. Moreover, one witness testified that defend-
ant said, before the alleged crime was committed, that
plaintiff's "place was in Jackson, and he would like to
see him there."

This case received the attention of this court on a former occasion, and is reported in 126 Mich. 594 (85 N. W. 1077). On that occasion each of the foregoing points was made. The evidence presented by that record was in every material particular that presented by this.   The majority of the court, as then constituted, reached the same conclusion as that indicated in this opinion.

2. Complaint is made because the court permitted plaintiff to prove the contract relations of defendant and Olmsted.   Counsel say:

"It was immaterial and irrelevant what the contract relation between Olmsted and Gregory was, for the reason that Gould was not acting under the instruction or request of Mr. Olmsted in the exercise of any of his rights under the contract."

Though the plaintiff was not acting under Olmsted's orders, the jury might properly have inferred that he entered defendant's barn and did the acts complained of because of the obligations resting upon him as a hired man of Olmsted; and therefore the contract relations between Olmsted and Gregory were material.

3. On the cross-examination of defendant, plaintiff's counsel was permitted to prove the number of acres in defendant's farm and the number of cottages owned by him at Magician Lake.   Defendant's counsel urge that the purpose and effect of this testimony was simply to prejudice the jury against defendant by proving that he was a man of some wealth.   We cannot assent to this reasoning. We are unable to say that the size of defendant's farm would not have some bearing upon the rights of his tenant, Olmsted, and of his hired man, the plaintiff, to handle the horse and use the basket claimed to have been stolen.   As already noted, defendant was to furnish two teams "in working said farm, when necessary," and tools "as may be needful."   Nor was it improper to ascertain how many cottages defendant owned.   For the purpose of establishing malice, a witness for the plaintiff had testified that defendant had stated "somebody had been down to his cot-

tages, and had broken into the boathouses, and knocked holes in the boats, or something of that kind, and that he thought Mr. Gould was to blame for it."

In the course of this cross-examination, it transpired that, though defendant had owned the farm for many years, he was not certain just how many acres it contained, and, after the court had first ruled (a ruling which he subsequently changed) that this was a collateral matter, plaintiff's counsel said, "The idea that a man has owned a farm 30 years, and don't know how many acres there is!" While we agree with counsel for defendant that, under the circumstances, this remark was improper, we do not think it was reversible error. Immediately thereafter defendant testified:

"That farm lies upon the lake, and it is all of it fractional; that is, there is a good deal fractional. * * * My son now owns a part of it, and I really haven't figured up to see. It is divided by section lines and quarter lines, and within a few acres I couldn't tell."

With this explanation, we are unable to see how defendant could be harmed by the remark complained of. Indeed, that remark is more likely, under these circumstances, to have prejudiced plaintiff than the defendant.

As we find no reversible error complained of in defendant's original brief, the judgment of the court below will be affirmed.

The other Justices concurred.