[Civil No. 1521.   Filed May 19, 1917.]

[165 Pac. 318.]

H. S. GRISWOLD and MARY GRISWOLD, Appellants, v. REBECCA HORNE, Appellee.

1. MALICIOUS PROSECUTION—MALICE—INSTRUCTIONS.—In an action for malicious prosecution, an instruction that the jury might infer malice from want of probable cause was erroneous as authorizing the jury to find malice from want of probable cause alone.

2. MALICIOUS PROSECUTION—"MALICE."—Malice in law may be defined as a wrongful act done intentionally without just cause or excuse, and it may exist along with malice in fact or where there is an entire absence of true malice.

3. TRIAL—INSTRUCTIONS—INVASION OF PROVINCE OF JURY.—In an action for malicious prosecution, an instruction containing the tacit

intimation that in the opinion of the judge, defendants ought to "smart" for the prosecution, was erroneous as invading the province of the jury.

4. TRIAL—INSTRUCTIONS—EMPHASIS OF TESTIMONY.—It is error for the court in giving instructions to single out and group certain portions of the testimony favorable to plaintiff to the disparagement of other relevant and material facts favorable to defendant.

   [As to what is necessary evidence to support action for malicious prosecution, see notes in 12 Am. Dec. 265; 26 Am. St. Rep. 127.]

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Reversed.

Messrs. Baker & Baker, for Appellants.

Mr. Robert S. Fisher and Mr. Robert A. Jarrott, for Appellee.

FRANKLIN, C. J.—This is an action for malicious prosecution. The jury found a verdict for the plaintiff, upon which judgment was entered. The defendants moved for a new trial, which was denied. From the judgment and the order overruling the motion for a new trial this appeal is prosecuted.

The appellants, Mr. and Mrs. Griswold, who were defendants in the court below, are an elderly couple advanced in years beyond the threescore and ten. For a period of four or five years Miss Rebecca Horne, the appellee, who was plaintiff below, lived in the home of appellants in Phoenix, Arizona, her occupation being that of a nurse and companion, and her reputation for honesty and integrity excellent. Miss Horne and the Griswolds grew to be very fond of each other, and lived together on the most amicable terms. Indeed, Miss Horne was regarded more as a member of the Griswold family than otherwise. She called Mr. and Mrs. Griswold "Daddy" and "Mother," and they in turn affectionately addressed her as "Dear Bess." In the summer of 1914 the Griswolds went on a summer's vacation to California, and before leaving Mrs. Griswold placed some jewelry in a small box and secreted it in a large box containing some bed linen located in the lower part of the house as a place not likely to be found by anyone entering the house with intent to steal. The jewelry is not of any considerable value in money, but is highly prized

by Mrs. Griswold. Some of its pieces are heirlooms of her family and dear to her as a matter of sentiment. During the absence of the Griswolds their house was occupied by Miss Horne and a Mr. and Mrs. McDole, but for a brief period of this time Miss Horne was away on a visit to Prescott. Two men, friends of Mr. McDole, also occupied a sleeping porch for two or three nights.

The Griswolds returned home on the 15th of September, and several days thereafter Mrs. Griswold, in looking for the jewelry, discovered that the small box containing it had been removed from the large box containing the bed linen and the contents of the large box containing the linen had been disarranged. Mrs. Griswold questioned Miss Horne about it, but the latter denied any knowledge whatever about the jewelry or its hiding place. Mrs. Griswold thought that Miss Horne was hiding the jewelry from her as a practical joke, because, so she states, Miss Horne saw her secrete the jewelry and was asked to rescue it in case of fire. Some of the jewelry was found in the bottom of a trunk belonging to Miss Horne and a few pieces of silverware in a chiffonier drawer located in a room occupied by her. The testimony as to the circumstances attending these matters and the conduct and attitude of Miss Horne and the Griswolds thereabouts present sharp conflicts. Eventually, however, the Griswolds claim to have become convinced that Miss Horne had stolen the jewelry, and, at the suggestion of Mrs. Griswold, Mr. Griswold swore to a complaint before a committing magistrate charging Miss Horne with the crime of grand larceny. At the preliminary examination the magistrate discharged Miss Horne, and this ended the prosecution. In the above statement we purpose merely to give a general outline of the case so that some adequate knowledge of the matter before us may be had. As the case must go back for a new trial we do not consider it proper to go over the case and recite the testimony nor express any opinion about it.

The heat of the controversy in the superior court centered about the good faith of the Griswolds in instituting the prosecution. The court gave the following instructions, which serve as a basis for our conclusions to reverse the case:

"Envy, hatred, and malice are separate and distinct passions, and the worst of these is malice, because it is a deliberate purpose to do an injury to some person without just

cause or excuse. Malice in law is the deliberate purpose to injure another without just cause or excuse. It means the willing act of an evil mind; the intention to wrong another unjustly. It implies the making up of the mind to do evil to some one. Therefore any indirect motive of wrong is a malicious motive. For example, if one sets the criminal law in motion against another, not for the purpose of bringing that other to justice for the violation of some law, but for the purpose, for instance, of aiding the prosecutor to recover property, a jury might well consider that was evidence of a malicious motive, because the criminal law was not designed to aid persons in the restoration of property; and they who set the criminal law in motion for such a purpose should smart for it, and in a proper case would be made to smart for it. I trust you clearly understand now what is meant by the malice which must be present as the motive in a malicious prosecution. That malice or malicious motive must be proved to the satisfaction of the jury by the greater weight of the testimony. It is not necessary that malice be expressly shown—for instance, by proof of threats or the like. Malice may be implied. It may be inferred from circumstances. For example, malice may be inferred in a prosecution, if the prosecution is one without probable cause. If the jury are satisfied from the testimony that the prosecution was wholly without cause or without probable cause, then they may infer, and justly infer, that it was prompted by malice.

"The court instructs the jury that, if they believe from the facts and circumstances proved on the trial that defendant had not probable cause for prosecuting the plaintiff, and that they did prosecute her, as charged in the complaint, then the jury may infer malice from such want of probable cause."

These instructions make it clear that the jury were misdirected in the essential matter of malice, so that the case must go back in order that this feature may be fairly and accurately outlined and correctly presented for the determination of another jury.

The principles by which the rights of parties are to be measured in actions of this sort are well settled. It is frequently said that actions for malicious prosecutions have never been favored in law. The idea may, perhaps, better be expressed by saying that such actions are to be properly guarded and their true principles strictly adhered to. When

this is done and the proper elements to support the action have been presented it will be readily upheld. The reasons for this must at once be obvious. The purpose of the law is to protect individuals in their just rights.

"In most instances," quoting from Modern ·American Law, volume 2, page 287, "in determining whether or not such a right has been violated, the law looks only to the conduct of the alleged wrongdoer, without regard to the motive actuating the conduct. In some instances, however, from considerations of public policy, this rule is disregarded, and conduct is declared tortious and actionable only when prompted by evil motive. In these exceptional cases the improper intent is as much an essential part of the tort as the conduct induced by it. Malicious prosecution falls into this exceptional class. The public policy requiring this · is easily found. Society cannot be protected without courts, which are the great conservative agencies in and through which the disputes and controversies of men are adjusted. It is essential that these tribunals shall be open to all persons who in good faith believe they have grievances against their neighbors, or who in good faith believe the criminal law has been violated. To adopt a policy which would make every unsuccessful plaintiff in a civil case, or every witness for the state in a criminal case, liable in damages to the defendant therein, whenever the plaintiff in the case failed to obtain judgment, would make litigation so hazardous that men would fear to resort to it."

Though public prosecutors do their part in the detection and punishment of public offenses, still it is common knowledge that the public justice is largely vindicated through the knowledge of crime possessed by private individuals, and to treat that as a legal wrong which consists merely in an unwarranted prosecution would be plainly impolitic and unjust. Such proceedings to the one charged with crime may be serious, but whatever of inconvenience and damage that may thus be suffered by the individual is overcome by that public policy of the state which protects every man who in good faith and for the purpose of vindicating the public justice institutes or sets on foot criminal proceedings. The law has therefore taken hold of the matter and established certain rules by which to fix liability for the improper institution and maintenance of actions in the courts. But, says Mr. Cooley:

"Nevertheless it is a duty which every man owes to every other not to institute proceedings maliciously which he has no good reason to believe are justified by the facts and the law. Therefore an action as for tort will lie when there is a concurrence of the following circumstances:

" (1) A suit or proceeding has been instituted without any probable cause therefor.

" (2) The motive in instituting it was malicious.

" (3) The prosecution has terminated in the acquittal or discharge of the accused." 1 Cooley on Torts, pp. 320, 321.

It will be observed that malicious motive is so important an element of this tort that it has been incorporated in its name. The action is called "malicious prosecution," and in discussing this most important element we must have some understanding of the meaning to be given to the words "malicious motive." In these instructions the jury are told in effect, in one by direct statement, and in the other emphasized by illustration, that:

"Malice may be inferred from the want of probable cause."

This is a phrase often found in legal text-books and in the opinions of judges. We shall admit the declaration to be true as a general proposition of law, and it is not necessary, nor is it our purpose here, to qualify or weaken it at all. Still we shall have but a superficial notice of its meaning unless we examine its foundations and find the reason for it, and, understanding somewhat of this, we must then properly limit the influence of such declaration to the concrete case.

A statement of the law by an appellate court addressed to the trained legal mind is a far different thing from the trial court's instruction to a jury of laymen which latter ought to be a plain, accurate, and direct charge to their understanding and give to them a better knowledge as an aid to the performance of their duty. The giving of an instruction to the jury which has received express judicial sanction must not be confused with a statement of the law made by an appellate court. And here we must notice the danger in submitting requests as emphasized by taking words from opinions of judges in the appellate courts severed and disconnected from their texts and attempting to have them applied to another and different state of facts. We insert a few expressions from the authorities on this matter:

"It often happens that judges in writing opinions and authors of legal text-books in discussing or defining propositions of law express themselves in language wholly unsuited for the purposes of instructions to juries." *McGee* v. *State,* 117 Ala. 229, 231, 23 South. 797, 798.

"It is not always safe to take an excerpt from an opinion and embody it in an instruction, because the opinion is addressed to lawyers, while the instruction is addressed to laymen." *Magrane* v. *St. Louis & Suburban R. Co.,* 183 Mo. 119, 128, 81 S. W. 1158, 1159.

"There are many things said in opinions that are sound law, but which nevertheless would be improper instructions to a jury." 38 Cyc. 1595.

"The language of an opinion should never be framed into an instruction without fitting it to the case and leaving the jury to decide the questions of fact." *Shannon* v. *Swanson,* 109 Ill. App. 274, 277.

The Constitution forbids trial courts from instructing juries with respect to matters of fact or commenting thereon:

"Judges shall not charge juries with respect to matters of facts nor comment thereon, but shall declare the law." Const., art. 6, § 12.

We shall first notice the support which is given to this statement of the law as a correct instruction to the jury. In the brief of appellee it is said:

"It is contended by this evidence, much of which was elicited on cross-examination from the defendants and their witnesses, plaintiff raised a question for the jury as to probable cause, and that the court was warranted in instructing the jury that they might infer malice from the want of probable cause. This is a principle so elementary as to scarcely justify argument. *Wheeler* v. *Nesbit,* 24 How. 544 [16 L. Ed. 765] ; *Ray* v. *Goings,* 112 Ill. 658; *Carson* v. *Edgeworth,* 43 Mich. 241 [5 N. W. 282] ; Cooley on Torts (3d ed.), 337; *Cunningham* v. *Moreno,* 9 Ariz. 300 [80 Pac. 327]."

Reading these authorities must convince one that the breadth of appellee's statement is unjustified and any support for it in the cases cited entirely lacking.

In *Wheeler* v. *Nesbitt,* 24 How. 544, 16 L. Ed. 765, there was no attempt on the part of plaintiff to prove express malice. The jury returned their verdict in favor of the defendants, and the plaintiff excepted to the charge of the

court. It was made clear in that case that in actions of this kind the plaintiff must show that the defendant acted from malicious motives in prosecuting him, and that he had no sufficient reason to believe him to be guilty. If either of these be wanting the action must fail. Said the court:

"Undoubtedly every person who puts the criminal law in force maliciously, and without any reasonable or probable cause, commits a wrongful act; and if the accused is thereby prejudiced, either in his person or property, the injury and loss so sustained constitute the proper foundation of an action to recover compensation. Malice alone, however, is not sufficient to sustain the action, because a person actuated by the plainest malice may nevertheless prefer a well-founded accusation, and have a justifiable reason for the prosecution of the charge. Want of reasonable and probable cause is as much an element in the action for a malicious criminal prosecution as the evil motive which prompted the prosecutor to make the accusation; and though the averment is a negative one in its form and character, it is nevertheless a material element of the action, and must be proved by the plaintiff by some affirmative evidence, unless the defendant dispenses with such proof by pleading singly the truth of the several facts involved in the charge. *Morris* v. *Corson,* 7 Cow. [N. Y.] 281. Either of these allegations may be proved by circumstances, and it is unquestionably true that want of probable cause is evidence of malice, *but it is not the same thing;* and unless it is shown that both concurred in the prosecution, or that the one was combined with the other in making or instigating the charge, the plaintiff is not entitled to recover in an action of this description." (Italics supplied.)

The court held that whether the prosecution was or was not commenced from malicious motives was a question of fact, and it was for the jury to determine whether the inference of malice was a reasonable one from the facts in that case. This case makes it very clear, as do the authorities from a very early time, that malicious motives and a want of probable cause must both concur before a recovery may be allowed; that these two very essential elements are not one and the same thing; that, while the facts and circumstances tending to show want of probable cause may also tend to show malicious motives underlying the prosecution, they also may not tend in that direction; that the jury may so find,

but that they also may not so find, according as the facts and circumstances of the concrete case might persuade. In that case the lower court, in charging the jury, said that the want of probable cause afforded a presumption of malice, but that such presumption might be rebutted by other evidence showing that the party acted *bona fide* and in the honest discharge of what he believed to be his duty, and then said:

"If, however, the jury find that the arrest was wanton and reckless, and that no circumstances existed to induce a reasonable, dispassionate man to believe that the defendant was guilty of having stolen the horses he had in his possession, then the jury ought to infer malice."

While this instruction is less objectionable than those at bar, it was more favorable to the plaintiff than he had the right to expect, and the court concluded it furnished no ground for his exception.

In *Carson* v. *Edgeworth,* 43 Mich. 241, 5 N. W. 282, the charge as given required the jury to find the existence of malice as a fact. Said the court:

"But the jury in this case had abundant evidence before them from which actual malice might be inferred."

In Cooley on Torts and *Cunningham* v. *Moreno, supra,* are found merely the language of legal abstractions, giving no instruction on the point under consideration.

Looking into the Illinois cases, that of *Roy* v. *Goings,* cited by appellee, while apparently in point, may be readily distinguished from the case at bar. In that case the court gave substantially the instruction here complained of. There was strong evidence of actual malice actuating the prosecution Said the court:

"Instructions are given in view of the evidence in the case, and not as mere legal abstractions. An instruction may be proper or not, in view of the evidence before the jury. If the trial court was satisfied that the evidence strongly tended to prove malice, then the instruction could, even if erroneous in that respect, have done no harm, *and when considered in this case, it tends, in the strongest manner, not only to prove the want of probable cause, but malice on the part of appellant.*" (Italics supplied.)

Malice may be inferred from a want of probable cause where, as in *Ross* v. *Innis,* 35 Ill. 487, 85 Am. Dec. 373, a powerful house possessed of extensive means made an infa-

mous charge which they knew was unfounded and wrong-
fully prosecuted a poor and friendless young man, or, as in
*Reno* v. *Wilson*, 49 Ill. 95, where "there was no semblance
of criminal conduct, and no act done which could be tortured
into crime" and where the defendant's conduct "from the
commencement to the termination of the prosecution seems
to have been prompted by no reverence for the law, by no
desire to bring one of its violators to punishment, but to
gratify bad passions, which, causelessly excited, appellant had
not the firmness and discretion to restrain," and the "arrest
was attended with the most degrading and humiliating cir-
cumstances," or where, as in *Chapman* v. *Cawrey*, 50 Ill. 512,
517, "no crime was committed and no just suspicion of one"
existed, and "malice on the part of appellant crops out in
every part of this transaction," or, as in *Krug* v. *Ward*, 77
Ill. 603, 610, where the Criminal Code was resorted to for the
gratification of personal malice and the attainment of dis-
honorable personal ends. It may be so inferred in such like
cases because in the facts and circumstances strong evidence
of actual malice actuating the prosecution is present. The
foregoing are fair illustrations of the cases in which such an
instruction might be condoned as harmless, even if erroneous,
not because it is a proper instruction to be given to the jury,
but because under the facts actual malice is present independ-
ent of the mere fact of the want of probable cause. In other
words, it depends upon the facts and circumstances of the
particular case whether or not the inference be a proper one.
Said the Illinois court:

"Malice may be inferred from want of probable cause
where the circumstances are inconsistent with good faith on
the part of the prosecutor and where such want of probable
cause has been clearly proven." *Frank Parmelee Co.* v.
*Griffin*, 136 Ill. App. 307, 319.

And in the case of *Barker* v. *Ronk*, 134 Ill. App. 499, it is
said:

"When *all* the facts and circumstances proven show a want
of probable cause for the arrest and imprisonment of the
plaintiff on a charge of crime, the jury may take this fact
into consideration, and from it infer malice, *not as a matter
of law, but as a conclusion of fact.*" (Italics supplied.)

XIX Ariz.—5

Green, J., in *Morrell* v. *Martin,* 17 Ill. App. 336, said:

"A person may entertain malice against another, and, moved by that feeling, institute a prosecution for a crime against the object of his hatred; and if the latter is guilty of such crime, or if the one instituting such prosecution has probable cause for believing him guilty thereof, an action for malicious prosecution will not lie. To maintain such action there must be no probable cause and malice concurring."

To justify a recovery for malicious prosecution said the court in *Wilmerton* v. *Sample,* 39 Ill. App. 60:

"The proof must show both malice and want of probable cause. Whether either of these necessary elements existed in this case was hotly contested on both sides, and it was earnestly denied by appellant. *It was therefore important that the law should have been accurately declared to the jury.*" (Italics supplied.)

In commenting upon the three necessary elements that must always exist in order to maintain this sort of action—that is to say, first, want of probable cause, second, the malicious motive in instituting the proceeding, and third, the termination of the prosecution in plaintiff's favor—Mr. Justice PILLSBURY, in the case of *Comisky* v. *Breen,* 7 Ill. App. 369, 372, puts the matter of malice so clearly that we quote it at length:

"The plaintiff must show that the motive of the prosecutor in instituting the proceeding was malicious, and the question of malice is one for the jury under all the facts in evidence. It must be found to exist as a material fact in the case, and while it is said in some of the cases that malice may be inferred from a want of probable cause, it is not intended to hold that this inference is in all cases necessarily to be deduced from the existence of the fact that there was no probable cause for the arrest. Justice SHELDON in *Harpham* v. *Whitney, supra* [77 Ill. 32], says: 'It is often said the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case a legal presumption from the want of probable cause, it being for the jury to find from the facts proved, when there was no probable cause, whether there was malice or not.' Therefore it is seen that it depends upon the facts and circumstances in the case going to prove the want of probable cause whether the jury should

or should not infer malice from the want of probable cause. While it would be difficult to announce a rule applicable to every case as it may arise, perhaps it may be said that the jury would be authorized to infer malice from the want of probable cause alone, where the facts and circumstances in evidence which establish the principal fact are inconsistent with good faith upon the part of the prosecutor, but in cases where the proof may show a want of probable cause, yet if the evidence upon this point is consistent with good faith, the jury ought not to infer malice, simply because the principal fact is proved, but in such case the plaintiff should go further and introduce independent evidence of malice in the prosecutor. Malice therefore, not being a legal presumption in any case, is to be proved like any other fact, and so long as all the evidence in the case is consistent with good faith on the part of the defendant, it cannot be fairly said that malice is established. If the accompanying circumstances, however, show that the defendant in instituting the prosecution was actuated by an improper or wrongful motive, this will be sufficient proof of malice.''

It will be seen, therefore, that the Illinois court is in accord on this question with the authorities elsewhere to the effect that malice is not a legal presumption, but is a question of fact; that want of probable cause and malice are not the same thing; that one element may exist without the presence of the other; that, while malice may be inferred in some cases from a want of probable cause according as the facts and circumstances disclose it, nevertheless it is a deduction that cannot be made merely from the existence of the fact that there was no probable cause for the prosecution; that the verdict of a jury will not be set aside simply because they have been told that malice may be inferred from a want of probable cause when the facts and circumstances in evidence clearly establish malice and the jury could not have found otherwise had such instruction not been given; in a word, when upon the whole case substantial justice has been done.

In sustaining an assignment of error to an instruction almost identical with the second one above, the supreme court of Arkansas, in the case of *L. B. Price Mercantile Co.* v. *Cuilla,* 100 Ark. 316, 141 S. W. 194, observed:

''This instruction was erroneous in telling the jury, as a matter of law, that they might infer malice from want of

probable cause. This amounted to an instruction on the weight of the evidence; for it was equivalent to saying to the jury that a finding of want of probable cause was sufficient to justify a finding of malice. Now, a trial jury in a case of this sort may or may not, according to the circumstances of the case, draw an inference of malice from a want of probable cause. It is a mere inference of fact, and not presumption of law; and, as the jury are not bound to draw such an inference as a matter of law, it amounts to an instruction on the weight of the evidence to tell them what facts are of sufficient weight to warrant the inference. . . . A trial jury, in determining whether a prosecution was maliciously instituted, may consider the fact that there was a probable cause for the prosecution along with other facts and circumstances proved in the case, including the conduct of the parties who instituted the prosecution; but they should not be told that the want of probable cause, any more than any other fact or circumstance proved in the case, was sufficient to justify an inference of malice. The giving of this instruction was therefore erroneous and prejudicial, and calls for the reversal of the case.''

A less erroneous instruction of this kind was given in *Kellogg* v. *Ford*, 70 Or. 213, 139 Pac. 751, and held to be error. The supreme court of that state in reviewing it said:

"The instruction as to the inference that might be drawn from evidence showing want of probable cause was misleading, and therefore erroneous. While it is true that malice may be inferred from want of probable cause, it is not a necessary inference and is never an inference of law. Want of probable cause is a fact to be considered by the jury with other facts in determining the presence or absence of malice.''

This principle is recognized by the Texas courts:

"Malice may be inferred from the want of probable cause, where there are no circumstances to rebut the presumption that malice alone could have suggested the prosecution; and it may be inferred where the defendant's conduct will admit of no other interpretation, except by presuming gross ignorance. 3 Phill. Ev. 257. In the language of Chief Justice SHAW in a case before cited, 'the groundlessness of the prosecution may in many instances be so obvious and palpable that the existence of malice may be inferred from it.' *Wills* v. *Noyes*, 12 Pick. [Mass.] 326. But malice is in no case a

legal presumption, or to be inferred as a necessary conse-
quence of the want of probable cause." *Griffin* v. *Chubb,* 7
Tex. 603, 608, 58 Am. Dec. 85.

In *Willis & Bro.* v. *McNeill,* 57 Tex. 465, quoting the sylla-
bus, the rule is adhered to that:

"Malice is not an inference of law from the want of prob-
able cause, but is a mere inference of fact, which the jury
may or may not draw, according to the facts and circum-
stances of the case."

It is necessary then, in every instance, in order to maintain
an action for malicious prosecution, that malice must be
shown. The statement that malice may be inferred from the
want of probable cause is not the statement of a legal pre-
sumption, but merely an expression of what the triers of fact
are privileged to do if they see fit, and the facts and circum-
stances of the concrete case warrant the inference. There
are different kinds and degrees of malice as well as the nature
of the evidence going to prove its existence. Many definitions
of the term have been attempted, and courts and text-writers
are continually struggling with its meanings and definitions.
For instance, says GAYNOR, J.:

"The jumble in some modern text-books on slander and
libel concerning malice, actual malice, malice in law, malice
in fact, implied malice, and express malice (all derived from
judicial utterances, it is true) is a striking testimony of the
limitations of the human mind." *Ullrich* v. *N. Y. Press Co.;*
23 Misc. Rep. 168, 50 N. Y. Supp. 788.

This confusion with its meanings is not entirely lacking in
the cases on malicious prosecution. For the purposes of this
case it is sufficient to say that the law recognizes a difference
in two kinds or descriptions of malice, namely, malice in fact
and malice in law, in actions for malicious prosecution; and
in this sort of action it is absolutely essential to its existence
that malice in fact as distinguished from malice in law be
present. "Malice in law" may be defined as a wrongful act
done intentionally without just cause or excuse, and it may
exist along with malice in fact or where there is an entire
absence of true malice. Said HENSHAW, J., in *Davis* v.
*Hearst,* 160 Cal. 143, 116 Pac. 530:

"We shall define 'malice in law' as being that malice which
the law presumes (either conclusively or disputably) to exist
upon the production of certain designated evidence, which

malice may be fictional and constructive merely, and which, arising, as it usually does, from what is conceived to be the necessity of proof following a pleading, which in turn follows a definition, is to be always distinguished from true malice or malice in fact.''

And in Modern American Law, volume 2, page 299, the text reads:

''Malicious motive is absolutely essential to the existence of this tort. Ordinarily evil motive is not necessary to make wrongful and injurious conduct a tort. The cases in which evil motive is essential are usually, if not always, those in which the act complained of as wrongful is primarily unlawful in its nature, but from considerations of public policy is licensed when committed with lawful motive. When evil motive actuates the conduct, the license is withdrawn, and the act goes back to its original state of unlawfulness.

''Applying these general doctrines to malicious prosecution, we find that every time a plaintiff in a civil suit, or the state in a criminal action, fails to maintain the case, and final judgment goes for the defendant, this is an authoritative adjudication that the suit was wrongfully brought. Such conduct, strictly considered, should be unlawful. But, from considerations of public policy, this unlawful interference with the rights of the defendant, occasioned by an honest, though mistaken, belief that the action was well founded, is excused, or licensed, by law, and the successful defendant can maintain no further action on account of it. To allow such action would lead to endless litigation. Each time a plaintiff should be unsuccessful the defendant could sue him for damages, and each time a criminal prosecution failed the prosecuting witness would be subject to a like suit. This the law cannot tolerate. To avoid such conditions, it licenses the wrong of the unsuccessful suit unless it be prompted by evil motive. Hence the rule is universal that to maintain an action for malicious prosecution in every instance malice must be shown.''

Whatever it is called, therefore, the element necessary here is malice of the one kind—the malice of the evil motive. Says Pollock in his Law of Torts (9th ed.), page 328:

''The explanation of malice as 'improper and indirect motive' appears to have been introduced by the judges of the King's Bench about 70 years ago. But 'motive' is perhaps

not a much clearer term. 'A wish to injure the party rather than to vindicate the law' would be more intelligible.''

Bearing in mind, as Justice HENSHAW says in the case quoted *supra,* ''that it may be established either by direct proof of the state of mind of the person, or by indirect evidence so satisfying to the jury that they may infer and find the existence of this malice in fact,'' let us give an illustration or two that may indicate the distinction between malice in law and malice in fact. If one gives a perfect stranger unaware a blow with a deadly weapon likely to produce death, he does it of malice, because he does it intentionally without just cause or legal excuse. If he maims cattle without knowing whose they are, if he poisons a well of drinking water without knowing who is likely to drink of it, he does it of malice, because it is a wrongful act and done intentionally without any legal justification or excuse. This is the malice of the law—a malice of pleading and proof made necessary by definitions of offenses against the law or the exigencies of the case. It is established by a conclusive legal presumption, and proof of malice in fact is not required. If one publishes false words of another, and the occasion is not privileged, he does so at his peril, and he must answer for the consequences. The law will not protect him, because libel and slander in such a case are against public policy, and rarely, if ever, spring from other than malicious motives. It is a wrongful act done intentionally without justification or excuse. This also is the malice of the law. But if the occasion for the publication of the false words be privileged, this repels the legal presumption that slander springs from malicious motives. It is then *prima facie* excusable on account of the cause of the publication, and actual malice or malice as an independent fact must be proved to make out a case, as, for instance, that the publisher used the occasion to traduce or injure another. Speaking hereof in *Hemmens* v. *Nelson,* 138 N. Y. 517, 20 L. R. A. 440, 34 N. E. 342, the court says:

''This kind of malice which overcomes and destroys the privilege is, of course, quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive.''

In a case where a person in order to gratify feelings of revenge at the expense of female character persisted in prose-

cuting a woman for larceny after being advised by able and learned counsel to desist, the Maine court said:

"There is no doubt that malice in fact, as distinguished from malice in law, is essential to the maintenance of an action for malicious prosecution. Actions of slander are sometimes maintainable without proof of actual malice, constructive malice being sufficient. The reason for the distinction is this: Slander is always against public policy, and very rarely, if ever, springs from other than malicious motives; but the prosecution of alleged criminals is not against public policy, and it is only occasionally that such a prosecution is commenced without probable cause. Hence, in actions of slander, the falsity of the charge being shown, malice is established by a legal presumption, and proof of actual malice is not required; but in actions for malicious prosecution the law allows of no such presumption, and requires proof of actual malice to sustain them. Actual malice may be inferred by the jury from the want of probable cause, or be proved by other circumstantial evidence, like any other fact; but it is a fact to be found by the jury, and not a fact to be established by a legal presumption." *Humphries* v. *Parker*, 52 Me. 503.

"It is well established," says the Minnesota court, "that in the action of malicious prosecution both malice and want of probable cause must be proven by the plaintiff as distinct issues. The malice which is the essential element of malicious prosecution is not, like the malice essential in libel, slander, and false imprisonment, a mere fiction of the law; it is a state of mind to be proved as a fact. Want of probable cause may exist without malice. The reason is plain. The information on which a defendant acted may have induced him to act in the utmost good faith, so that his mind is entirely free from malice, and yet it may not be sufficient to constitute probable cause, for the test of probable cause is not the belief induced in him, but the belief induced in the mind of a reasonably prudent man. The jury may in a proper case infer malice from want of probable cause, but they are not bound to infer malice in every case where want of probable cause is proven. The inference which they may draw is one of fact, and not of law." *Hanowitz* v. *Great Northern Ry. Co.*, 122 Minn. 241, 142 N. W. 196.

To constitute malice there must be *malus animus,* denoting that the party who instituted the original proceeding was actuated by wrong motives. 26 Cyc. 48.

The principle is announced in the English cases. It is said in *Hicks* v. *Faulkner,* 8 Q. B. Div. 167:

"It is true as a general proposition that want of probable cause is evidence of malice; but this general proposition is apt to be misunderstood. In an action of this description the question of malice is an independent one, of fact purely, and altogether for the consideration of the jury, and not at all for the judge. The malice necessary to be established is not even malice in law, such as may be assumed from the intentional doing of the wrongful act, but malice in fact, *malus animus,* indicating the party was actuated either by spite or ill will toward an individual, or by indirect or improper motives, though these may be wholly unconnected with any uncharitable feeling toward anybody."

See, also, *Bromage* v. *Prosser,* 4 B. & C. 247, per BAYLEY, J.

"I have always understood," said PARKE, J., in *Mitchell* v. *Jenkins,* 5 Barn. & Adol. 588, 594, "that no point of law was more clearly settled than that in every action for a malicious prosecution or arrest the plaintiff must prove what is averred in the declaration, viz., that the prosecution or arrest was malicious and without probable cause; if there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable; but when there is no reasonable or probable cause, it is for the jury to infer malice from the facts proved. That is a question in all cases for their consideration."

It was ruled in another English case not to be enough to show the prosecutor was in the wrong because there was no probable cause for the prosecution, but that it must appear that he was maliciously so, that is, obstinately, and improperly in the wrong, through anger, ill feeling, or any bad motive or feeling differing from a sincere desire to put the law in force. *Darling* v. *Cooper,* 11 Cox C. C. 533.

The "*malus animus,*" the "improper and indirect motive," is sometimes shown very clearly, as, for instance, where the prosecution is made use of to extort money, or to obtain a title to the property alleged to have been stolen, or to gain some personal advantage over the one charged with crime, or where

there is a wish in some way to injure the party prosecuted rather than an honest effort to vindicate the law. Still it would be for the jury to find whether such was the motive for the prosecution, and, while the absence of probable cause is sometimes evidence of malice, yet it is not evidence of malice when the prosecutor honestly believes in the charge, and has no motive but a sincere and honest desire to vindicate the public justice. A person who on the strength of circumstances of grave suspicion, which are sufficient to convince him of the probable guilt of the person concerned, institutes an unsuccessful prosecution under a sense of public duty, would have a defense to an action for malicious prosecution, not because there was probable cause for it; for the state of circumstances which moved him to act, assuming them to be true, might not reasonably lead an ordinarily prudent person placed in the position of the accuser to the conclusion that the person charged was probably guilty of the crime imputed, but because he could negative malice by reason of his honest belief in the guilt of the accused and his effort in good faith to vindicate the public justice. Here there would be an utter absence of evil motive, though, strictly considered, such conduct should be unlawful. Because the party acted with honest motives and for justifiable purposes, however, the law, from reasons of public policy, excuses him.

So it must be admitted that the imperative necessity for a clear and accurate direction to the jury in actions for malicious prosecutions is apparent, and the reason for the rule that such actions are to be properly guarded and their true principle strictly adhered to obvious.

Said Lord BRAMWELL in *Abrath* v. *Northeastern Ry. Co.*, 11 App. Cas. 252, 253:

"A man brings an action for malicious prosecution; he gives evidence which shows or goes to show that he is innocent. You may tell the jury over and over again that that is not the question, but they never or very rarely can be got to understand it. They think that it is not right that a man should be prosecuted when he is innocent, and in the end they pay him for it. It is therefore all-important that these actions should not be permitted to be brought against persons or bodies or others who are not properly liable in respect of them."

Chief Justice BREESE, in *Collins* v. *Hayte,* 50 Ill. 353, observed:

"Our experience teaches us there are few questions of law more difficult of comprehension by a jury than those which govern trials for malicious prosecutions. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover. They do not readily, comprehend why an innocent man may be prosecuted for a supposed crime or offense, and yet have no recourse against the prosecutor who caused his arrest and imprisonment, and yet the preservation of the peace and the good order of society require, that even innocent men may be compelled to submit to great inconvenience and hardship, rather than citizens should be deterred from instituting prosecutions where there is reasonable or probable grounds to believe in the existence of guilt. Good faith on the part of the prosecution is always an important, if not a vital, element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt, when it would have been wanting in the perception of a person of ordinary prudence and judgment."

For, said the same learned judge in *Israel* v. *Brooks,* 23 Ill. 526:

"Few men could be found who would be willing to originate a criminal prosecution if, on failure to establish the guilt of the accused, he himself was to be subjected to an onerous and expensive suit."

A learned author to the same purpose says:

"Actions for malicious prosecution are regarded by law with jealousy. Lord HOLT said more than 200 years ago that they 'ought not to be favored, but managed with great caution.' Their tendency is to discourage prosecution for crime, as they expose the prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages." Newell on Malicious Prosecutions, § 13.

It must not be overlooked that the element of malice in this action is as important as the fact of a want of probable cause. Want of probable cause may exist without malice. Malice

may exist with probable cause. If there is no probable cause for the prosecution, but no malice, a recovery cannot be had. If there be probable cause, no malice, however distinctly proved, will avail. In a certain sense to prosecute another without probable cause therefor is wrongful, but in the true legal sense the wrong is not actionable unless it is done maliciously, because in this sort of action to prevail in it both malice and a want of probable cause must concur; and if either element be wanting, the damage, if any, caused by the prosecution, is within the maxim, *"Damnum absque injuria esse potest."* By the true principle then guarding this sort of action the mere prosecution of another without probable cause is not the doing of a "wrongful act intentionally without justification or excuse" from which the law imputes malice with respect to it irrespective of motive. Malice and the want of probable cause are independent facts to be proved like any other fact, and both must concur. Neither is a legal presumption. If this were not true, it would be necessary for the plaintiff only to prove his discharge at a preliminary examination by a committing magistrate. His case would then be complete; for the other necessary elements would be supplied by legal presumptions. The essential element of malice may or may not be inferred from all the facts and circumstances of a given case. The jury are not to be told, however, that it may be inferred from the mere fact alone that there is a want of probable cause for the prosecution. This generality of statement is scarcely justified in an instruction, and it must be held to be prejudicial error under the facts and circumstances of this case.

In literary aptitude and acquirement the instruction in the present case first quoted is somewhat embellished. It may not lack a proper taste and sentiment, nor in exploring the scenes of philosophical research is it, perhaps, found wanting. In all this it is an aspiring effort. The words "envy, hatred, and malice," with which it begins, are found in the litany of the Church of England, and there they are appropriate to the teaching of a splendid Christian lesson, but comparing one passion with others and emphasizing that of malice as being the worst of all has no place in a direct, simple statement of the law to be embodied in an accurate and dispassionate charge to the jury. A correct instruction on the malice here essential is " . . . the thing wherein I'll catch

the conscience of the king.'' The thing that the jury is about calls for the exercise of a more practical duty than is concerned in a mere moral speculation. And right here it may be also observed that there is not entire accord among moral philosophers as to which is the worst of passions. Indeed, by some Envy is considered the name of the Prince of Hades, a very Pandora's box in which hatred and malice are nested, and whence fly a multitude of evils to afflict us. We are cited to no case authoritatively foreclosing speculation thereabouts. A little analysis of this instruction would demonstrate a number of imperfections in it.

We are content to say that it is wholly bad, and the giving of the instruction is disapproved because it is highly argumentative, and in its very nature calculated to confuse, mislead, and prejudice the jury. There is a tacit intimation from the bench that in the opinion of the judge the defendants ought to ''smart'' for the prosecution. Instructions should be limited to a plain, simple and direct statement of the law in order that the jury might intelligently apply the evidence that has been adduced before them.

An author says: ''The judge should hold the scales of justice evenly, and not assume the character of the advocate. Argumentative instructions trench upon the province of the jury, and therefore should not be given and the giving of them is error.'' 2 Thompson on Trials, par. 2301. See, also, 38 Cyc. 1600.

Assignments of error numbered 2, 3, and 4 take exceptions to instructions which in succession single out and group certain portions of the testimony favorable to the plaintiff and give them undue prominence to the disparagement of other relevant and material facts favorable to the defendant. Without prolonging the opinion to discuss these instructions separately, we quite agree with counsel for appellant in saying that:

''By means of these several instructions all the facts supposed to be favorable to the plaintiff's case were paraded before the jury in succession and a profound silence was kept as to all facts favorable to the defendant's case. In other words, facts favorable to the plaintiff were emphasized and made prominent. No better way could be devised to control the verdict of a jury.''

This method of instructing juries is disapproved.

Other assignments are predicated on erroneous procedure, but, in view of a new trial, error, if any here, may not occur again.

For misdirection to the jury to the prejudice of appellants, the judgment must be reversed, and a new trial granted.

It is so ordered.

CUNNINGHAM and ROSS, JJ., concur.